**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Luis Martinez

    v.                                    Civil No. 13-cv-144-LM
                                         Opinion No. 2014 DNH 051
Carolyn W. Colvin, Acting
Commissioner, Social Security
Administration


**O R D E R**


Pursuant to 42 U.S.C. § 405(g), Luis Martinez moves to
reverse the Acting Commissioner's decision to deny his
application for Social Security disability insurance benefits,
or DIB, under Title II of the Social Security Act, 42 U.S.C. §
423, and for supplemental security income, or SSI, under Title
XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves
for an order affirming her decision.  For the reasons that
follow, this matter is remanded to the Acting Commissioner for
further proceedings consistent with this order.


**Standard of Review**

The applicable standard of review in this case provides, in
pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment

> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §

405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . .

benefits unless 'the [Commissioner] has committed a legal or

factual error in evaluating a particular claim.'"  Manso-Pizarro

v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting

Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

     As for the statutory requirement that the Commissioner's

findings of fact be supported by substantial evidence, "[t]he

substantial evidence test applies not only to findings of basic

evidentiary facts, but also to inferences and conclusions drawn

from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916,

917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727,

730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more

than [a] mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a

conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st

Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401

(1971)).  But, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir 1991) (citations omitted).  Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).  Finally, when determining whether the decision of the Acting Commissioner is supported by substantial evidence, this court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## Background

The parties have submitted a Joint Statement of Material Facts, document no. 16.  That statement is part of the court's record and will be summarized here, rather than repeated in full.

Martinez last worked in 2007.  Up until that time, his work experience consisted of furniture refinishing, plastic molding,

and shipping and receiving fruit.  He cannot read or write in English.  He has received treatment for both physical and mental conditions, but because the ALJ's handling of Martinez's mental condition is sufficient to warrant a remand, the court does not describe his physical conditions in this order.

The earliest record of Martinez's mental condition comes from a psychiatric evaluation conducted by Dr. Phillip Santora in November of 2008.  See Administrative Transcript ("Tr.") 411-15.  Based upon Martinez's history and the results of a mental status examination, Dr. Santora diagnosed Martinez with, among other things: (1) major depressive disorder; (2) panic disorder with agoraphobia; (3) moderate to severe psychological and environmental problems; and (4) a GAF of 45.[1]

---

[1] GAF stands for Global Assessment of Functioning.  See American Psychological Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed. 2000) 27.  "A GAF score represents 'the clinician's judgment of the individual's overall level of functioning.'"  Nickerson v. Astrue, No. 1:11-cv-87-GZS, 2012 WL 975641, at *2 n.2 (D. Me. Mar. 21, 2012) (quoting DSM-VI-TR, supra, at 32).  "The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death)."  Nickerson, 2012 WL 975641, at *2 n.2 (citation omitted).  A GAF score of 41 to 50 indicates: "**Serious symptoms (e.g.,** suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning (e.g.,** no friends, unable to keep a job)."  DSM-IV-TR, supra, at 34 (emphasis in the original).

Tr. 413-14.  After he performed the psychiatric evaluation described above, Dr. Santora began to treat Martinez.  That treatment appears to have been limited to medication, including Celexa (an antidepressant[2]) and Diazepam (an antianxiety medication[3]).

In June of 2009, after having treated Martinez for approximately seven months, Dr. Santora completed a Mental Impairment Questionnaire on Martinez.  See Tr. 405-10.  In it, he: (1) repeated the diagnosis he gave Martinez in November of 2008; (2) reported the following clinical findings: "dep[ressed] mood, fatigue, anxiety, panic attacks, insomnia," Tr. 405; (3) gave a prognosis of "guarded," id.; and (4) identified the following signs and symptoms: appetite disturbance with weight loss, decreased energy, somatization[4] unexplained by organic disturbance, mood disturbance, difficulty thinking or concentrating, psychomotor retardation, persistent disturbances of mood or affect, emotional withdrawal or isolation,

---

[2] See Dorland's Illustrated Medical Dictionary (31st ed. 2007) 317, 372.

[3] See Dorland's, supra note 2, at 519.

[4] Somatization is "[t]he process by which psychological needs are expressed in physical symptoms; e.g., the expression or conversion into physical symptoms of anxiety . . . ." Stedman's Medical Dictionary (28th ed. 1006) 1788.

unrealistic interpretation of physical signs or sensations
associated with the preoccupation or belief that one has a
serious disease or injury, memory impairment, and recurrent
severe panic attacks manifested by a sudden unpredictable onset
of intense apprehension, fear, terror and sense of impending
doom occurring on the average of at least once a week.

Based upon those signs and symptoms, Dr. Santora opined
that: (1) with respect to mental abilities and aptitudes to do
unskilled work, Martinez was seriously limited but not precluded
in seven areas and unable to meet competitive standards in nine
others; (2) with respect to abilities and aptitudes for
semiskilled and skilled work, Martinez was seriously limited but
not precluded in one area and unable to meet competitive
standards on four others; and (3) with respect to abilities and
aptitudes for particular types of jobs, Martinez was very good
in one area, limited but satisfactory in one area, and seriously
limited but not precluded in three others.  In the realm of
functional limitations, Dr. Santora determined that Martinez had
marked restrictions in his activities of daily living, marked
difficulties in maintaining social functioning, marked
difficulties in maintaining concentration, persistence, or pace,
and had had one or two episodes of decompensation, within a

6

twelve-month period, each of which lasted for at least two
weeks.

Dr. Santora further opined that Martinez had: (1) a
medically documented history of affective disorder, of at least
two years' duration, that has caused more than a minimal
limitation of his ability to do any basic work activity; (2) a
residual disease process that has resulted in adjustment so
marginal that even a minimal increase in mental demands or a
minimal change in the environment would be predicted to cause
him to decompensate; and (3) a current history of inability, for
one or more years, to function outside of a highly supportive
living arrangement, with an indication of a continued need for
such an arrangement.  Dr. Santora's questionnaire concludes with
two more relevant opinions: (1) Martinez has an anxiety-related
disorder and a complete inability to function outside his home;
and (2) his impairment or treatment would cause him to be absent
from work for more than four days per month, which is the
highest degree of absenteeism listed in the questionnaire.

Martinez first filed for DIB and SSI benefits in 2007.  He
received an unfavorable decision from Administrative Law Judge
("ALJ") Sutker.  Among other things, she found that Martinez's
affective disorder and his anxiety disorder were severe

7

impairments, but not sufficiently severe to qualify as "listed impairments" under the applicable Social Security regulations. Martinez appealed the ALJ's decision to this court, which granted the Commissioner's assented-to motion to remand the case.  Upon remand, the case was to

> be assigned to an administrative law judge ("ALJ"), who [was to]: (1) reevaluate the severity of Plaintiff's . . . mental impairment[]; (2) provide a rational for [her] findings regarding Plaintiff's degree of limitation in each of the "paragraph B" criteria of mental functioning; (3) reassess the treating source opinion of Dr. Santora; and (4) further evaluate the credibility of Plaintiff's alleged mental limitations.

Tr. 601.  In its order remanding the case to ALJ Sutker, the Decision Review Board ("DRB") had this to say about her treatment of Martinez's mental impairments:

> The decision does not contain an adequate evaluation of the claimant's mental impairment(s) in accordance with the provisions set forth in 20 CFR 404.1520a and 416.920a.  The decision (Tr. 10) indicates that the claimant has a mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of deterioration or decompensation.  However, the Administrative Law Judge did not provide any rationale for these conclusions.  In addition, the decision (Tr. 12-13) did not accord the opinions provided by Phillip Santora, M.D., (Tr. 405-410) significant weight finding them not supported by his treatment notes. However, Dr. Santora's report is the only opinion evidence of record regarding the claimant's mental impairments.  The decision did not provide adequate rationale to support the limited weight accorded these

opinions.  Moreover, Dr. Santora assigned a Global
Assessment of Functioning (GAF) scale rating of 45
(Tr. 414) which could indicate a serious impairment in
social and occupational functioning (<u>Diagnostic and
Statistical Manual of Mental Disorders</u> (4th ed. 1994).
Further evaluation is necessary.

Tr. 607.  The DRB followed up that discussion by directing the

ALJ to do the following:

> Further evaluate the claimant's mental impairments in
> accordance with the special technique described in 20
> CFR 404.1520a and 416.920a, documenting application of
> the technique in the decision by providing specific
> findings and appropriate rationale for each of the
> functional areas described in 20 CFR 404.1520a(c) and
> 416.90a(c).
>
> . . . .
>
> Give further consideration to the claimant's maximum
> residual functional capacity during the entire period
> at issue and provide rationale with specific
> references to evidence of record in support of
> assessed limitations (Social Security Ruling 96-8p).
> In so doing, evaluate the treating and examining
> source opinions pursuant to the provisions of 20 CFR
> 404.1527 and 416.927 and Social Security Rulings 96-2p
> and 96-5p and non-examining source opinions in
> accordance with the provisions of 20 CFR 1527(f) and
> 416.927(f) and Social Security Ruling 96-6p, and
> explain the weight given to such opinion evidence.  As
> appropriate, the Administrate Law Judge may request
> the treating and examining sources to provide
> additional evidence and/or further clarification of
> the opinions and medical source statements about what
> the claimant can still do despite the impairments (20
> CFR 404.1512 and 416.912).  The Administrative Law
> Judge may enlist the aid and cooperation of the
> claimant's representative in developing evidence from
> the claimant's treating sources.

Tr. 608.

In response to the DRB's remand order, the ALJ conducted a hearing during which she took telephonic testimony from Dr. Carolynn Kapacoff, a psychologist.  Dr. Kapacoff had neither treated Martinez nor examined him.  Rather, her testimony was based solely upon a "few records concerning emotional or mental disorders" which she characterized as being "of poor quality." Tr. 558.  When the ALJ asked Dr. Kapacoff whether she "had sufficient medical evidence to establish the presence of a medically determinable [mental] impairment," Tr. 557, she responded, "[n]o," id.; see also id. at 557-58.  Later on, the following exchange took place between Dr. Kapacoff and Martinez's counsel:

> Q Doctor, if you just look at Exhibits 21F and 20F Dr. Santora lists signs and symptoms, and he describes his clinical findings, and he lists the DSM-IV of axes just within those two documents, you don't think there's enough information to support a diagnosis, a mental diagnosis?
>
> A I feel that there's enough for a diagnosis at that discreet time, I cannot speak for what is happening with the patient now.
>
> Q I have one last question, doctor, in order to determine whether or not Mr. Martinez has a mental impairment at this time does he need to undergo a psychological or psychiatric evaluation?
>
> A Yes or engage in treatments with another licensed mental health provider, a psychologist or a psychiatrist who could assess and also track progress.

Tr. 567.  Dr. Kapacoff further opined that, in her view, Dr.
Santora's opinions were not adequately supported by the amount
of treatment that was documented in his records.  But, while she
testified about the infrequency of Dr. Santora's treatment, Dr.
Kapacoff gave no opinion of her own as to Martinez's ability to
perform work-related activities.  Thus, at the time the ALJ
issued her second decision in this case, the record contained
only one medical-source opinion regarding Martinez's mental
impairments, just as it had when the DRB issued its remand
order.

After the hearing, the ALJ issued a decision that includes
the following relevant findings of fact and conclusions of law:

> 3. The claimant has the following severe impairments:
> degenerative disc disease of the lumbar spine and
> obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or
> combination of impairments that meets or medically
> equals the severity of one of the listed impairments
> in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
> 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925,
> and 416.926).
>
> . . . .
>
> 5. After careful consideration of the entire record, I
> find that the claimant has the residual functional
> capacity to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) except the claimant can
> lift and carry twenty pounds occasionally and ten

pounds frequently; he can walk for forty five minutes
at one time and stand for forty five minutes at one
time, but total standing and walking is limited to two
hours in an eight-hour workday; and he can sit for six
hours in an eight-hour workday.  The claimant must
avoid climbing ladders, ropes and scaffolds.  He must
avoid work at unprotected heights.  He is limited to
uncomplicated tasks, which are defined as tasks that
can be typically learned in 30 days or less.  The
claimant is limited to brief and superficial contact
with the public that is incidental to the job.  He
cannot understand, remember or follow instructions
written in English.

. . . .

6. The claimant is unable to perform any past relevant
work (20 CFR 404.1565 and 416.965).

. . . .

10. Considering the claimant's age, education, work
experience, and residual functional capacity, there
are jobs that exist in significant numbers in the
national economy that the claimant can perform (20 CFR
404.1569, 404.1569(a), 416.969, and 416.9969(a)).

Tr. 512, 515, 516, 519.  Based upon the testimony of a

vocational expert ("VE"), the ALJ determined that Martinez could

work as a document preparer, as an addresser, as a cutter and

paster, as a stuffer, and as a table worker.


## Discussion

According to Martinez, the ALJ's decision should be

reversed, and the case remanded, because the ALJ erred by: (1)

failing to find that he had a medically determinable mental

12

impairment; (2) improperly weighing the opinions given by Drs.
Santora and Kapacoff; (3) failing to obtain a consultative
psychiatric evaluation (4) failing to properly consider his
obesity; (5) making findings, when assessing his residual
functional capacity ("RFC"), that were either inconsistent with
one another or were incorrect; (6) improperly weighing the
opinion evidence concerning his physical capacity for work; and
(7) relying upon erroneous factual findings and VE testimony
that was not credible when determining that there were jobs in
the national economy that he could perform.  Martinez is
entitled to a remand based upon the manner in which the ALJ
handled Dr. Santora's opinions.

### A. The Legal Framework

To be eligible for disability insurance benefits, a person
must: (1) be insured for such benefits; (2) not have reached
retirement age; (3) have filed an application; and (4) be under
a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible
for supplemental security income, a person must be aged, blind,
or disabled, and must meet certain requirements pertaining to
income and assets.  42 U.S.C. § 1382(a).  The question in this
case is whether Martinez was under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A) (setting out a similar definition of disability for determining eligibility for SSI benefits).  Moreover,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also 42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard for determining eligibility for SSI benefits).

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. §§ 404.1520 (DIB) & 416.920 (SSI).

The steps are: 1) if the [claimant] is engaged in
substantial gainful work activity, the application is
denied; 2) if the [claimant] does not have, or has not
had within the relevant time period, a severe
impairment or combination of impairments, the
application is denied; 3) if the impairment meets the
conditions for one of the "listed" impairments in the
Social Security regulations, then the application is
granted; 4) if the [claimant's] "residual functional
capacity" is such that he or she can still perform
past relevant work, then the application is denied; 5)
if the [claimant], given his or her residual
functional capacity, education, work experience, and
age, is unable to do any other work, the application
is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20
C.F.R. § 416.920).

The claimant bears the burden of proving that he is
disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He
must do so by a preponderance of the evidence.  See Mandziej v.
Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.
Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

[i]n assessing a disability claim, the [Commissioner]
considers objective and subjective factors, including:
(1) objective medical facts; (2) [claimant]'s
subjective claims of pain and disability as supported
by the testimony of the [claimant] or other witness;
and (3) the [claimant]'s educational background, age,
and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797
F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690
F.2d 5, 6 (1st Cir. 1982)).

B. Martinez's Arguments

As noted, the discussion that follows focusses upon the manner in which the ALJ handled the opinions offered by Dr. Santora.

1. Step 2

In her decision, the ALJ determined that neither Martinez's affective disorder nor his anxiety disorder was "a severe medically determinable . . . mental impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). The Commissioner argues that the ALJ's finding is supported, in part, by Dr. Kapacoff's testimony "that the record contained insufficient medical evidence to establish the presence of a medically determinable mental impairment." Resp't's Mem. of Law (doc. no. 14-1) 5. But, Dr. Kapacoff also testified that Dr. Santora's two diagnoses were, in her opinion, adequately supported by the signs, symptoms, and clinical findings documented in his psychiatric evaluation and the Mental Impairment Questionnaire he filled out. Thus, there can be no question that Martinez's affective disorder and his anxiety disorder are medically determinable impairments; they were, in fact, medically determined. Thus, the only issue is the severity of those impairments.

In the First Circuit, it is well established "that the Step 2 severity requirement is . . . to be a de minimis policy, designed to do no more than screen out groundless claims." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986). Given that Dr. Santora's Mental Impairment Questionnaire includes the only medical evidence in the record that addresses the severity of Martinez's mental impairments, and that Dr. Santora opined that those mental impairments substantially diminished Martinez's functional capacity, the ALJ erred by finding that Martinez's mental impairments were not severe for purposes of Step 2 of the sequential analysis. But, because Martinez's claim was not denied at Step 2, the ALJ's error was harmless. See Hickman v. Comm'r of Soc. Sec. Admin., 399 F. App'x 300, 302 (9th Cir. 2010) ("Any error in the ALJ's failure to include a reading disorder as one of Hickman's severe impairments at step two of the analysis is harmless. The ALJ found Hickman suffered from other severe impairments and, thus, step two was already resolved in Hickman's favor.") (citing Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005)); see also Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824–25 (11th Cir. 2010). The same does not hold true for the ALJ's assessment of Martinez's mental RFC.

2. RFC

At Step 4 of the sequential evaluation process, when determining whether a claimant can perform his or her past relevant work, the Commissioner is obligated to assess the claimant's RFC.  See 20 C.F.R. §§ 404.1520(e) & 416.920(e). When assessing Martinez's mental RFC, the ALJ had before her the opinions provided by Martinez's treating psychiatrist, Dr. Santora, and the testimony provided at the hearing by Dr. Kapacoff.  In her decision, the ALJ gave little weight to Dr. Santora's opinion and gave Dr. Kapacoff's testimony substantial weight.  There are several problems with the ALJ's handling of that medical evidence.

First, she appears to mischaracterize Dr. Kapacoff's testimony.  In her decision, the ALJ wrote:

> While the claimant carried diagnoses of panic disorder
> without agoraphobia and major depressive disorder,
> consistent with Dr. Ka[p]acoff's testimony, such
> diagnoses are questionable due to the lack of medical
> evidence supporting such diagnoses in the evidentiary
> record.

Tr. 514.  But, when asked whether there was enough information in Dr. Santora's records to support those diagnoses, Dr. Kapacoff gave this response: "I feel that there's enough for a diagnosis at that discreet time . . . ."  Tr. 567.  So, Dr. Kapacoff did not question the validity of Dr. Santora's

diagnoses.  Moreover, while opining that those diagnoses pertained to a discreet time, Dr. Kapacoff appears not to have addressed Dr. Santora's additional opinion that Martinez's "impairment [had] lasted or can be expected to last at least twelve months," Tr. 410.

There is, however, an even more fundamental problem. Specifically, whatever else it might be, Dr. Kapacoff's testimony is <u>not</u> an opinion about Martinez's RFC, because she said virtually nothing about "what [Martinez could] do in a work setting," 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1), or "the most [he could] still do despite [his] limitations," <u>id.</u>  Rather than offering an opinion on Martinez's RFC, Dr. Kapacoff did little more than criticize Dr. Santora's opinion.  While Dr. Kapacoff's testimony may have sufficed to support the ALJ's decision to give little weight to Dr. Santora's opinion, that opinion was the <u>only</u> medical opinion on Martinez's mental RFC, and an ALJ is generally not free to formulate an RFC that runs counter to the only medical opinion in the record.  As this court recently explained:

> In Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999), the ALJ rejected a medical opinion "as inconsistent with 'actual findings made on exam and the degree of treatment needed,' the lack of 'recent treatment,' and some unspecified aspect of the entire record." <u>Id.</u> at 35 (footnote omitted).  However, the medical opinion

the ALJ rejected was uncontroverted by any other
medical opinion in the record.  See id.  The court of
appeals held that the ALJ committed reversible error
by formulating an RFC that ran counter to the only
medical opinion evidence in the record:

> The ALJ was not at liberty to ignore medical
> evidence or substitute his own views for
> uncontroverted medical opinion.  Rose v. Shalala,
> 34 F.3d 13, 18 (1st Cir. 1994); Nieves v.
> Secretary of Health and Human Services, 775 F.2d
> 12, 14 (1st Cir. 1985; Suarez v. Secretary of
> Health and Human Services, 740 F.2d 1 (1st Cir.
> 1984) (per curiam).

> The Commissioner suggests that despite Dr.
> Mahoney's opinion, the medical record supported
> the ALJ's determination that claimant was fully
> capable of performing sedentary work.  As a lay
> person, however, the ALJ was simply not qualified
> to interpret raw medical data in functional terms
> and no medical opinion supported the
> determination.  Manso-Pizarro v. Secretary of
> Health and Human Services, 76 F.3d 15 (1st Cir.
> 1996); Perez v. Secretary of Health and Human
> Services, 958 F.2d 445, 446 (1st Cir. 1991);
> Berrios Lopez v. Secretary of Health and Human
> Services, 951 F.2d 427 (1st Cir. 1991); Gordils
> v. Secretary of Health and Human Services, 921
> F.2d 327, 329 (1st Cir. 1990).

Nguyen, 172 F.3d at 35.

Jabre v. Astrue, No. 11-cv-332-JL, 2012 WL 1216260, at *8-9

(D.N.H. Apr. 5, 2012) (report and recommendation adopted by 2012

WL 1205866 (D.N.H. Apr. 9, 2012)).  Here, given the severity of

the limitations expressed in Dr. Santora's opinion, and the lack

of any medical opinion to the contrary, the ALJ erred in her

formulation of Martinez's mental RFC, and that error warrants a remand.

### 3. Issues on Remand

Because the ALJ's mishandling of the medical evidence provides sufficient grounds for remand, the court need not address Martinez's remaining arguments.  Nevertheless, the court offers the following observation, for consideration on remand.

The ALJ noted in her decision that "the claimant's representative inquired about obtainment of a consultative examination for review of the claimant's alleged mental impairments."  Tr. 515.  But, "[b]ased on the testimony of Dr. Ka[p]acoff and the evidentiary record as a whole, [the ALJ found] such [an] examination . . . not [to be] warranted," id. However, Dr. Kapacoff's testimony was that the medical records were sparce and of poor quality, and she further testified that to properly determine whether Martinez has a mental impairment, he should undergo a psychological or psychiatric evaluation. So, rather than undercutting Martinez's request for a consultative examination, Dr. Kapacoff's testimony actually supports that request.  Accordingly, a consultative examination may well be in order.  See 20 C.F.R. §§ 404.1545(a)(3) & 416.945(a)(3).

**Conclusion**

For the reasons detailed above, the Acting Commissioner's motion for an order affirming her decision, document no. 14, is denied, and Martinez's motion to reverse the decision of the Acting Commissioner, document no. 10, is granted, to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 10, 2014

cc:  Janine Gawryl, Esq.
     T. David Plourde, Esq.